# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUNIQUE THOMPSON,** | 1:16-cv-01464-LJO-JLT |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT PLAINTIFF'S MOTION FOR SANCTIONS** |
| v. | |
| **BIG LOTS STORES, INC., and DOES 1 through 50, inclusive,** | |
| Defendants. | **(ECF No. 11)** |

## I. INTRODUCTION

Plaintiff Junique Thompson ("Plaintiff" or "Thompson") brings this action against Defendants Big Lots Stores, Inc. ("Big Lots" or "Defendant") and Does 1 through 50 alleging pregnancy discrimination and related causes of action. Plaintiff originally filed suit in Kern County Superior Court; the Complaint alleged only state law claims. Defendant timely removed to this Court, invoking diversity jurisdiction. Now before the Court is Plaintiff's motion for remand and for sanctions in the amount of $4,500.00. (ECF No. 11). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

1

## II. BACKGROUND

**A.    Factual Allegations**

Defendants operate, own and manage nationwide discount retail stores. (Complaint ("Compl") ¶ 7, ECF No. 1.) Plaintiff Junique Thompson began working at Big Lots on June 4, 2014, first as a sales associate and later as a stocker. (*Id.* ¶ 8.) During the course of her employment, Plaintiff performed her duties in a competent and efficient manner. (*Id.* ¶ 10.) In September 2014, Plaintiff informer her supervisor ("Mirna") that she was pregnant. (*Id.* ¶ 9.) Mirna informed Plaintiff's other supervisor ("Blanca") of Plaintiff's pregnancy. (*Id.*) Prior to informing her supervisors that she was pregnant, Plaintiff worked on average 35 to 40 hours per week. (*Id.* ¶ 9.) After the supervisors became aware of her pregnancy, her hours were reduced to about 16 hours per week. (*Id.* ¶ 10.) Plaintiff was not given an explanation for why her hours were reduced, but she believes that it was due to her pregnancy. (*Id.* ¶¶ 10, 11.)

On October 15, 2014, Plaintiff met with her doctor because she was experiencing cramping and back pain. (*Id.* ¶ 12.) Her doctor wrote a note indicating that she would need to remain off work for two days due to her symptoms. (*Id.*) Plaintiff provided the note to Defendants. (*Id.* ¶ 13.) Blanca informed Plaintiff that the note was inadequate because it did not indicate a return date (although Plaintiff alleges that it did) and asked Plaintiff to obtain a new note. (*Id.* ¶¶ 12, 13.) Plaintiff informed Blanca that she would not be able to obtain a new note for a couple of weeks because her doctor was on vacation, and Blanca indicated that Plaintiff was not allowed to return to work until she received a new note. (*Id.* ¶¶ 13, 14.) During this time, Plaintiff received weekly scheduling e-mails from Defendants indicating that she was not allocated any work hours. (*Id.* ¶ 15.)

Plaintiff obtained a new note when her doctor returned from vacation. (*Id.* ¶ 16.) When Plaintiff returned to work with the note, Blanca refused to accept it. (*Id.*) Blanca instead informed her that she had been terminated and that her job had been given to someone else. (*Id.* ¶ 16.)

Defendant was terminated on November 6, 2014. (*Id.* ¶ 18.) Plaintiff exhausted her

2

1 administrative remedies by timely filing a complaint with the Department of Fair Employment and

2 Housing (DFEH) and receiving a right-to-sue notice. (*Id.* ¶ 19.)

**B.    Procedural Background**

Plaintiff filed the original complaint on August 8, 2016 in Kern County Superior Court. (ECF No. 1.) Plaintiff's state court complaint alleges following causes of action: (i) disability discrimination in violation of California Government Code § 12940, *et seq.*; (ii) failure to accommodate disability in violation of California Government Code § 12940(m); (iii) failure to engage in interactive process in violation of California Government Code § 12940(n)); (iv) failure to provide pregnancy disability leave and interference with right to pregnancy-related disability leave in violation of California Government Code § 12945; (v) pregnancy and sex discrimination in violation of California Government Code § 12940, *et seq.*; (vi) failure to prevent discrimination in violation of California Government Code § 12940(k); (vii) wrongful discharge in violation of public policy; (viii) retaliation in violation of (California Government Code § 12940(h)); (ix) violation of California Business & Professional Code § 17200; and (x) intentional infliction of emotional distress. (ECF No. 1.) The Complaint does not plead a specific amount of damages. Rather, it prays for economic damages, including "wages and benefits that she would have continued to receive as an employee of Defendants," non-economic damages, including for emotional distress, punitive damages, and attorney's fees. (Compl. ¶ 82, Prayer for Relief.)

On September 28, 2016, Defendant Big Lots filed a notice of removal pursuant to 28 U.S.C. § 1441 and the case was removed to this Court. (ECF No. 1.) On January 12, 2017, Plaintiff filed a motion to remand the case to state court and for sanctions in the amount of $4,500.00. (ECF No. 11.) Defendant Big Lots filed an opposition on January 26, 2017 (ECF No. 14), and Plaintiff filed a reply on February 2, 2017 (ECF No. 15). The matter is now ripe for review. Venue is proper in this Court.

### III. MOTION FOR REMAND

A state-court defendant may remove a case from state to federal court if the federal courts would have original jurisdiction over the case. 28 U.S.C. § 1446(a). To accomplish this task, the removing

defendant files a notice of removal in the federal district court in the district and division within which the state court action was pending. *Id*. The notice must contain "a short and plain statement of the grounds for removal"—in a case relying on diversity jurisdiction, that the parties are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a)—"together with a copy of all process, pleadings, and orders" served previously on the removing defendant. 28 U.S.C. § 1446(a).

The plaintiff may then challenge the removal on the basis that the requirements for subject-matter jurisdiction have not been met. There are two requirements for the proper exercise of this Court's diversity jurisdiction. The first requirement is "complete diversity" of the parties, meaning that "no plaintiff can be a citizen of the same state as any of the defendants." *Majestic Ins. Co. v. Allianz Intern. Ins. Co.*, 133 F. Supp. 2d 1218, 1220 (N.D. Cal. 2001) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). The second requirement is that the amount in controversy must exceed $75,000. *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015) (citing 28 U.S.C. § 1332(a)(1).

It is undisputed that complete diversity exists between the parties. (ECF No. 11 at 3-4; ECF No. 14 at 2-3.) At issue in this case is the second requirement—amount in controversy. Plaintiff contends that Defendant has failed to meet its burden of showing that the amount at issue in this case is greater than $75,000. (ECF No. 11 at 4.) Defendant counters that in seeking general and punitive damages, as well as attorney's fees, Plaintiff is requesting relief in excess of $75,000. (ECF No. 14.)

Plaintiff's Complaint does not specify a particular damages amount. In such cases, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). When determining whether the removing defendant has met this burden, the court may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal . . .[c]onclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) (citation and quotation marks omitted). Additionally, the removing defendant

4

may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) (citation and internal quotation marks omitted) (assumptions "cannot be pulled from thin air but need some reasonable ground underlying them"). A defendant cannot establish removal jurisdiction by mere speculation, or prove the requirement on the basis of unreasonable assumptions. *Id.* at 1197.

"In calculating the amount in controversy, a court must assume that the allegations in the complaint are true and that a jury will return a verdict for plaintiffs on all claims alleged." *Page v. Luxottica Retail North Am.*, No. 2:13-cv-01333-MCE-KJN, 2015 WL 966201, at *2 (E.D. Cal. Mar. 4, 2015). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will *actually* owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint). Furthermore, "in an action by a single plaintiff against a single defendant, all claims can be aggregated to meet the minimum jurisdictional amount." *Haase v. Aerodynamics Inc.*, No. 2:09-CV-01751-MCE-GG, 2009 WL 3368519, at *5 (E.D. Cal. Oct. 19, 2009) (citing *Wolde-Meskel v. Vocational Instruction Project Community Services, Inc.*, 166 F.3d 59, 62 (2d Cir. 1999)).

In her Complaint, Plaintiff requests general compensatory damages, alleging that she has suffered a loss of money and property in the form of "wages and benefits that she would have continued to receive as an employee of Defendants." (Compl. ¶¶ 25-26, 33-34, 42, 49, 54-55, 61, 67-68, 73, 82, 87, and Prayer for Relief ¶ 1.) Plaintiff also seeks damages for "severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety." (*Id.* ¶¶ 27, 35, 43, 50, 56, 62, 68, 74, 86-87 and Prayer for Relief.) Additionally, Plaintiff seeks punitive and exemplary damages and attorneys' fees and costs. (*Id.* ¶¶ 28, 36, 44, 51, 57, 63, 69, 75, 89 and Prayer for Relief.)

A. **<u>Compensatory Damages</u>**

Plaintiff argues that lost wages must be measured "at the time of removal" and thus concludes that Plaintiff's lost wages from the time she was terminated until the date that the case was removed to federal court amount to $27,027.00 (99 weeks working approximately 30 hours per week at a rate of $9.10 per hour). (ECF No. 11 at 5-6.) Defendants counter the court should project out lost wages over the course of the case, which is currently scheduled for trial on July 31, 2018. (ECF No. 10.) Defendants accordingly calculate Plaintiff's lost wages to be $53,235 (the same weekly rate for 195 weeks). (ECF No. 14 at 4-5.)

Plaintiff argues that because courts consider the amount in controversy "at the time of removal" they are limited to assessing the lost wages already accrued at that time. (ECF No. 11 at 5-6.) However, although "the court evaluates the amount in controversy at the time of removal . . . it may consider both past and future lost wages." *James v. Childtime Childcare, Inc.*, No. CIV.S-06-2676 DFL DA, 2007 WL 1589543, at *4 n.1 (E.D. Cal. June 1, 2007) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006)). In *Kroske*, the Ninth Circuit affirmed the district court's finding that the amount in controversy would exceed $75,000 where the district court's calculation relied on both past and future wages. 432 F.3d at 980. Courts in this district have likewise projected lost wages through trial to determine whether the jurisdictional amount in controversy has been met. In *Tiffany v. O'Reilly Auto. Stores, Inc.*, the court estimated both past and future lost wages through the trial date in determining that the amount in controversy in a pregnancy discrimination suit exceeded $75,000. No. CIV. S-13-0926 LKK, 2013 WL 4894307, at *2-4 (E.D. Cal. Sept. 11, 2013); *see also James*, 2007 WL 1589543, at *4 & n.1 (considering future lost wages in determining the amount in controversy) *Chambers v. Penske Truck Leasing Corp.*, No. 1:11-CV-00381 LJO GSA, 2011 WL 1459155, at *4 (E.D. Cal. Apr. 15, 2011) ("although this Court declines to project future wage loss until a trial date is set, it is reasonable to anticipate compensatory damages may exceed [the amount at the time of removal]"), *report and recommendation adopted*, 2011 WL 1739913 (E.D.

6

Cal. May 4, 2011). The court concluded in *Tiffany* that the projected lost wages through the trial would amount to $47,920. 2013 WL 4894307, at *3. Aggregating that amount with the likely emotional distress, punitive damages, and attorney's fees for pregnancy discrimination cases litigated through trial, the court concluded that the jurisdictional amount in controversy was easily met. *Id.*

Here, Plaintiff requests future wages—earnings and benefits "that she would have continued to receive as an employee of Defendants." (Compl. ¶ 82.) The trial is currently set for July 31, 2018. (ECF No. 10.) Accepting Plaintiff's assertion that she worked approximately 30 hours per week earning $9.10 per hour for a weekly income of $273, and anticipating that she will have been out of work a total of 195 weeks by the conclusion of the trial, Plaintiff's lost wages will total $53,235.[1] (ECF No. 11 at 5; ECF No. 14 at 5.) Where, as here, a trial date has been set, the Court may calculate lost income to include both past and future lost income in determining the amount in controversy. *Chambers*, 2011 WL 1459155, at *4; *see also Scherer*, 347 F.3d at 399 (recognizing that the amount put in controversy by the plaintiff's complaint, rather than the ultimate or provable amount of damages, is what is considered when determining the amount in controversy). Therefore, the court finds that Defendant has proved by a preponderance of the evidence that Plaintiff alleges compensatory damages in excess of $50,000.

**B.     Emotional Distress Damages**

Plaintiff seeks damages for "severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety." (Compl. ¶¶ 27, 35, 43, 50, 56, 62, 68, 74, 86-87, and Prayer for Relief.) In determining the amount in controversy, the court may assess likely emotional distress damages by reference to damage awards in similar discrimination cases. *Kroske*, 432 F.3d at 980. In support of its argument that the amount in controversy exceeds $75,000, Defendant cites a number of employment discrimination cases where substantial emotional distress damages were

---

[1] The Court takes judicial notice of the fact that for employers with 26 or more workers, the minimum wage in California went up to $10.50 per hour on January 1, 2017, and will go up again to $11.00 per hour on January 1, 2018. Therefore, this figure likely underestimates Plaintiff's lost wages.

awarded to plaintiffs. (ECF No. 14 at 8-10.) Plaintiff counters that the cases cited by Defendant are not sufficiently analogous and that any calculation of potential damages for emotional damages is too speculative. (ECF No. 15 at 7-9.)

Defendant cites to several cases with similar fact patters to show that non-economic damages awards in discrimination cases are often substantial. For example, in *Lopez v. Bimbo Bakeries USA Inc.*, a jury awarded $122,000 in emotional distress damages to an employee who sued for pregnancy discrimination and wrongful termination. No. CGC05445104, 2007 WL 2339112 (Cal. Super. June 21, 2007). Similarly, in *Royal v. Los Angeles Community College District*, a plaintiff claiming discrimination following pregnancy complications and retaliation was awarded $65,000 in emotional distress damages. No. BC344348, 2007 WL 6369763 (Cal. Super. Apr. 2007.) Plaintiff does not explain her position that these cases are not analogous, nor does she cite any sex or pregnancy discrimination cases with minimal emotional distress damages. Although the Court is mindful that it should not generalize from a few examples, Defendant has met its burden of showing that damage awards for emotional distress in analogous cases are often substantial.

**C.     Punitive Damages**

The amount in controversy may include punitive damages when they are recoverable as a matter of law. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). Because plaintiff brings a claim under FEHA, and "[p]unitive damages are recoverable for FEHA violations," punitive damages may be included in the amount in controversy here. *Yeager v. Corrections Corp. of America*, 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013); *see also McDaniel v. Mondelez Glob.*, LLC, No. CIV. 2:14-898 WBS AC, 2014 WL 2987314, at *2 (E.D. Cal. July 1, 2014). Defendants cite a number of employment discrimination cases where punitive damages in excess of $75,000 were assessed as evidence that the amount in controversy exceeds that amount. Plaintiff counters that the cases cited by Defendant are not sufficiently analogous and that any calculation of punitive damages is speculative.

In the cases cited by Defendant with analogous fact patterns, plaintiffs were awarded well in excess of $75,000 in punitive damages alone. For example, in *Lopez*, the jury awarded $2 million in punitive damages (on top of the $122,000 in emotional distress damages referenced above) to an employee who sued for pregnancy discrimination. 2007 WL 2339112. Similarly, in *EEOC v. Farmer Bros. Co.*, the Ninth Circuit upheld a punitive damages award of over $800,000 in a sex discrimination case under FEHA and Title VII. 31 F.3d 891 (9th Cir. 1994). Defendant also points to *Robinson v. Mantra Films, Inc.*, where plaintiff, a terminated telemarketer alleging pregnancy harassment and discrimination and claiming $12,964 in back wages, was awarded $137, 930 in unspecified damages by an arbitrator. No. BC315050, 2006 WL 3198969 (Cal. Super. Oct. 4, 2007). Plaintiff does not explain her position that these cases are not analogous, nor does she cite any sex or pregnancy discrimination cases with punitive damages less than $75,000. Defendant has met its burden of showing that punitive damage awards in analogous discrimination cases often exceed the jurisdictional minimum on their own. Moreover, combining the likely economic damages in excess of $50,000 with economic and/or punitive damages that are likely in well in excess of the $25,000 required to meet the threshold, the amount in controversy requirement is easily met. *Tiffany*, 2013 WL 4894307, at *3 (noting in pregnancy discrimination case that the $75,000 threshold would be "easily met" by adding $47,920.00 in projected lost wages to emotional distress damages, punitive damages, and statutory attorney's fees likely to be in excess of $27,280.00).

**D.     Attorney's Fees**

Because "attorney's fees are recoverable as a matter of right to the prevailing party under FEHA . . . such fees may be included in determining the amount in controversy." *Haase*, 2009 WL 3368519, at *5 (citing *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998)). Defendant argues that the court should consider Plaintiff's attorney's fees, both accrued and prospective, in assessing the amount in controversy. Plaintiff argues that attorney's fees after the date of removal should not be considered.

9

Plaintiff states that the relevant inquiry is the attorney's fees accrued at the time of removal. District courts in this circuit are divided as to whether future attorney's fees may be considered in assessing whether the amount in controversy is met. *Compare Chambers*, 2011 WL 1459155, at *4 ("the measure of fees should be that amount that can reasonably be anticipated at the time of removal, not merely those already incurred") *with Faulkner v. Astro-Med, Inc.*, No. C 99–2562 SI, 1999 WL 820198 (N.D. Cal. Oct. 4, 1999) ("when estimating attorneys' fees for the purpose of establishing jurisdiction, the only fees that can be considered are those accrued as of the date of removal.").

The attorney's fees associated with litigating this case through trial, in addition to those already spent drafting the complaint, would likely be substantial. *See Simmons*, 209 F. Supp. 2d at 1035 ("The court notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages."). Plaintiff's counsel states that their hourly rate is $500 per hour. (ECF No. 11-2 at 2.) As one court recently noted, "recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours." *Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 WL 3248665, at *5 (C.D. Cal. June 8, 2016) (internal citations and quotation marks omitted). The court therefore concluded that "100 hours is an appropriate conservative estimate." *Id.* While the Court recognizes that "very few cases ultimately proceed to trial," it also notes that these "claims are unlikely to be immediately resolved." *Chambers*, 2011 WL 1459155, at *4; *see also Stainbrook*, 2016 WL 3248665, at *5 (concluding based on a $300 per hour attorney's fee rate and 100 hours of attorney work that Plaintiff's demand for attorney's under FEHA "adds at least $30,000 to the amount in controversy").

The Court observes that attorney's fees, even those already accrued, would add a substantial sum to amount in controversy. *See Chambers*, 2011 WL 1459155, at *4 ("While attorneys' fees alone would not necessarily exceed $75,000, when viewed in combination . . . the jurisdictional minimum is clearly satisfied." (internal citations and quotation marks omitted)); *see also Haase*, 2009 WL 3368519, at *5 (same). However, because Defendant has shown by a preponderance of the evidence that the combined

10

compensatory, emotional distress, and punitive damages are more likely than not well in excess of $75,000, the Court need not address whether attorney's fees not yet accrued should apply for purposes of determining whether the amount in controversy is met.

The Court concludes, based on conservative assumptions supported by facts, that the damages alleged by Plaintiff exceed the $75,000 amount in controversy requirement. Because Defendant has established by a preponderance of the evidence that the requirements for diversity jurisdiction are met, Plaintiff's motion for remand is DENIED.

### IV. SANCTIONS

Plaintiff seeks an award of sanctions in the amount of $4,500.00 for "just costs and actual expenses, including attorneys' fees, incurred as a result of the removal . . ." (ECF No. 11 at 11 (quoting 28 U.S.C. § 1447(c)).) However, based upon the foregoing discussion, Plaintiff's request is mooted by the denial of her motion.

### V. CONCLUSION AND ORDER

For the reasons stated above, Plaintiff's motion to remand the case to state court (ECF No. 11) is DENIED. Accordingly, Plaintiff's motion for sanctions in the amount of $4,500.00 is likewise DENIED AS MOOT.

IT IS SO ORDERED.

Dated: **February 13, 2017**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE